UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

JUDY WEIN

                Plaintiff,

    -against-

PRUDENTIAL INS. CO. OF AMERICA

              Defendant.

————————————————————————X

<u>MEMORANDUM & ORDER</u>
03-CV-6526 (NGG)(CLP)

GARAUFIS, United States District Judge:

Judy Wein ("Plaintiff" or "Wein") brings this action against the Prudential Insurance Company of America ("Defendant" or "Prudential) under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et</u> <u>seq.</u> ("ERISA") to recover partial long term disability benefits. Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, Defendant's motion is DENIED and Plaintiff's motion is GRANTED. Plaintiff's request for reasonable attorney's fees and costs is GRANTED.

## I.    Background

Wein has been employed by Aon Risk Services ("Aon") as an Assistant Director for over

---

[1] Defendant claims that it moves for "judgment on the administrative record" *and* under Fed. R. Civ. P. 56 ("Rule 56") for summary judgment. (Def's Mem. at 9-10.) The Second Circuit explains that a motion for "judgment on the administrative record" is not generally authorized by the Federal Rules, but that a district court may entertain such a application *after* a Rule 56 motion has already been denied on the issues under consideration. <u>Muller v. Unum Life</u>, 341 F.3d 119, 124 (2d Cir. 2003). As this court has not previously considered the issues litigated by the parties in these cross-motions, the parties' motions will be considered cross-motions for summary judgment under Rule 56.

twenty five years.  (Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1 Stmt.") ¶ 5; Defendant's

Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 1.)  Through her employment with Aon,

Plaintiff has been a participant in a long term disability group coverage plan ("the Plan")

pursuant to the insurance policy ("the Policy") issued by the defendant.  (Pl. 56.1 Stmt.¶ 18; Def.

56.1 Stmt. ¶¶ 2-3.)  The Policy provides for benefit payments to be made to the insured in the

event of a "long period of [d]isability," which may be "total" or "partial."  (Schlosser

Affirmation, dated Nov. 22, 2005, Ex. D ("Pl. Ex. D" or "the Administrative Record"), at 27-29.)

Plaintiff alleges that she is entitled to "partial disability" benefits under the Plan.  The conditions

of eligibility for partial disability under the Policy are all of the following:

> (1)     Due to Sickness or accidental Injury you are not able to perform for wage or
>         profit, the material and substantial duties of your occupation on a full time basis.
>
> (2)     You are working for wage or profit:
>         (a)     at your own occupation, but you are not able to perform your duties on a
>                 full time basis; or
>         (b)     at another occupation.
>         The amount of your earnings is your Partial Disability Earnings.
>
> (3)     Your Partial Disability Earnings are not more than 80% of your Pre-Disability
>         Earnings.  Your Pre-Disability Earnings are the amount of your monthly Earnings
>         before your period of Disability began.
>
> (4)     You are under the regular care of a doctor.

(Id. at 27; Def. 56.1 Stmt. ¶ 9.)

Wein's claim for partial disability benefits arose from injuries suffered as she escaped the

World Trade Center ("WTC") during the September 11, 2001 terrorist attacks on the WTC.

(Compl. ¶¶ 6,14.)  On that day, she was working on the 103rd floor of the WTC's South Tower,

when the North Tower was hit by an airplane.  (Id. ¶ 14.)  After she and her co-workers realized

that the WTC was under attack, they began descending the stairs to reach an elevator on the 78th

floor.  (Id.)  While on the 78th floor, the South Tower was hit by the second airplane.  (Id.)  The force of the explosion threw Wein to the floor, causing three broken ribs and a punctured lung, a compound fracture to the ulna (the forearm bone of the elbow) of her right arm, and damaging her right hand and wrist.  (Id. ¶ 15.)  Rescue workers assisted Wein, who escaped the building before its collapse, and Wein was surgically treated for her injuries.  (Id. ¶ 16.)

Plaintiff resumed her job duties on November 1, 2001, working part-time at home.  (Pl. Ex. D at 367.)  On February 22, 2002, Wein submitted a claim for long term disability benefits to Prudential.  (Id. at 347-67.)  Her submission included an Attending Physician Statement, dated February 11, 2002, from Andrew J. Weiland, M.D., an orthopedist and plastic surgeon.  (Id. at 356.)  Dr. Weiland stated that Plaintiff's injuries included a shattering of the bone in her right arm that connects her wrist to her elbow, damaging the "surrounding tissue and limiting motion in [her] wrist."  (Id. at 354.)  Dr. Weiland opined that Wein "tires easily" and is "unable to work at computer keyboard many hours straight" and recommended that she work "modified/flexible work hours."  (Id.)  Dr. Weiland also noted that Plaintiff "can work at home on her own schedule."  (Id.)

Prudential initially approved Plaintiff's claim for long term partial disability benefits on March 7, 2002.  (Id. at 69.)  However, on August 27, 2002, Prudential informed Plaintiff that it determined that she was not entitled to *total* disability payments and that her benefits would be terminated effective September 1.  (Id. at 74.)  In support of its decision, Prudential referred to subsequent evaluations from Dr. Weiland, from which it concluded that Plaintiff had "basically

regained full range of motion at the MP joints" and had been discharged from physical therapy.[2]
(Id. at 75.)  Specifically, Dr. Weiland's office treated Wein on May 14, June 11, and August 13, 2002.  (Id. at 303-305.)  On May 14, 2002, Dr. Weiland's office reported that Wein's fingers in her right hand had various degrees of limitations in their ranges of motion, with minimal pain. (Id. at 305.)  On June 11, 2002, Dr. Weiland wrote that Wein's fingers in her right hand had full range of motion.  (Id. at 304.)  On August 13, 2002, Dr. Weiland's office wrote a letter stating that there was a final evaluation of Wein's fingers, which revealed full range of motion in the fingers of her right hand.  (Id. at 303.)

Based on these reports, Prudential concluded that:

[T]here is no objective medical evidence in file demonstrating an impairment that would prevent you from performing the substantial and material duties of your occupation as a Assistant Director/Actuarial.  While we acknowledge that you may be experiencing continued symptoms, the objective medical information does not support Total Disability from your own occupation.

(Id.)

On August 29, 2002, Wein appealed Prudential's initial denial of benefits on the grounds that its denial improperly used the Plan's "total disability" definition despite the fact that her claim is based on a partial disability, and that she qualified as partially disabled under the Plan because her earnings were less than 80% of her pre-accident earnings and she was unable to

---

[2] In support of this statement, Defendant refers this court to its August 27, 2002 denial letter, and not to any underlying documents by Dr. Weiland.  (See Def. 56.1 Stmt. ¶¶ 13-14.) However, an examination of the Administrative Record reveals three notes from Dr. Weiland's office on May 14, June 11, and August 13, 2002.  As these dates correspond with the dates referred to in Prudential's initial denial, this opinion shall refer to these notes as the documents relied upon by Prudential in its initial denial.  However, Prudential is reminded of its obligation pursuant to Fed. R. Civ. P. 56 to cite to competent, admissible evidence in its motion for summary judgment.

perform her job duties full-time.  (Id. at 274-76.)  Responding to the medical evidence relied on by Prudential to deny her claim, Wein explained that while Dr. Weiland correctly assessed that she regained range of motion in her *fingers*, her partial disability claim alleged limitations to her *wrist*, which prevented her from using a computer with her right hand on a full-time basis.  (Id. at 276.)

To support her partial disability claim, Wein submitted reports from her treating orthopedist, Dr. Peter Stein, and two occupational and hand therapists.  (Id. at 290-97.)  On April 24, 2002, Dr. Stein wrote that he conducted a physical exam, which showed "[f]ull pronation and supination.  50 degrees of wrist flexion.  30 degrees of wrist extension.  There is a small click elicited at the proximal ulnar stump with pronation and supination.  When the patient attempts to make a fist her fourth and fifth fingers lack MP motion."  (Id. at 290.)  Dr. Stein assessed that Plaintiff "has a partial permanent disability that is quite significant" from the limitations caused by the compound fracture to Plaintiff's forearm, and opined that even assuming that Dr. Weiland's surgical procedures were successful, that Plaintiff "will always be significantly limited from this devastating accident.  Permanent work modification will be needed.  The patient will follow up with me as needed."  (Id. at 290-91.)  On August 6, 2002, after Dr. Weiland's surgical procedures, Dr. Stein opined that despite the fact that "[s]he has reached maximum medical improvement. . . . [, Wein] has a significant partial permanent disability, that with a reasonable degree of medical certainty will cause both long-term diminishing efforts daily to perform in the workplace as before, of 60% of the right upper extremity."  (Id. at 292.)

Amy Barenholtz ("Barenholtz"), an occupational therapist and a hand therapist in the Hospital for Special Surgery, stated on July 11, 2002 that Plaintiff "continues to have significant

limitations in range of motion and strength/power of her dominant extremity."  She listed

Plaintiff's wrist range of motion limitations, and assessed that:

> Due to the bone deficiency of the ulna and impaired integrity of the wrist joint, the ability to withstand full forces is compromised.  The resulting lack of motion limits her ability to weightbear through the joint without pain.  Power grip is suboptimal due to the limitations in flexion of her ring and small fingers.  In addition, it is difficult to hold and manipulate small objects in her palm.

(Id. at 297.)

On August 25, 2002, Ellen Kolber ("Kolber"), an occupational therapist and hand

therapist, wrote to the Special Master of The September 11th Victim Compensation Fund of

2001:

> It is my assessment that [Plaintiff] continues to have and will continue to have significant limitations in range of motion as well as reduced strength and power of her dominant right hand and wrist.  In addition, due to bone deficiency of the ulna and impaired integrity of the wrist joint, it is highly recommended that she take all reasonable precautions to protect these areas from further injury. . . . It is also advisable that [Plaintiff] avoids overusing her hand and wrist and performs activities such as typing and interacting with the computer.  It is recommended that she not work beyond the point of slight fatigue or slight discomfort.  She should avoid pain as it may indicate the effect of harmful stresses. . . . [Plaintiff's] injuries fundamentally remain a significant partial permanent disability that can cause long term diminution of her ability to perform in the workplace, as before, and result in a loss of future earning capacity in the range of 30% to 50%.  The fact that the injury occurred to her dominant hand, greatly affects her ability to function in all activities of daily living.

(Id. at 296.)

To support its review of its administrative appeal, Prudential retained Dr. Patrick Foye, a

rehabilitation physician, as a non-examining medical consultant to review Wein's medical file.

On September 17, 2002, Dr. Foye submitted to Prudential a report concluding that "it is my

medical opinion that the medical evidence regarding her current condition does NOT seem to

provide a current physical condition or impairment that would impair her ability to perform the

material and substantial duties of her own occupation on a full time basis, without restrictions."

(Id. at 250.)  In reaching this conclusion, Dr. Foye reviewed the medical files from Dr. Weiland

and Dr. Stein and the letters from Kolber and Barenholtz.  Dr. Foye recorded the above medical

evidence, taking issue only with Kolber's assessment of Plaintiff's loss of future earning capacity

of between 30% to 50% because it "does not specify the mathematical basis for the calculation of

future earning capacity."  (Id. at 249.)  Dr. Foye gathered from Aon organizational material that

Plaintiff's job title was "Assistant Director/Director," from which he concluded that Plaintiff had

"a managerial/supervisory position."  (Id. at 247-48.)

In addition, pursuant to a request by a Prudential employee that Dr. Foye speak directly

with Dr. Weiland concerning Plaintiff's claim, Dr. Foye reported a telephone interview that he

conducted with Dr. Weiland on September 17, 2002.  (Id. at 249.)  Dr. Foye reports of Dr.

Weiland's impression of Plaintiff:

> He reports that from his perspective the outcome for her injuries has been
> excellent, including restoration of fully normal range of motion.  Dr. Weiland
> stated that the patient's husband asked him to sign a letter/document limiting her
> work status and Dr. Weiland reports that he refused to sign it since he did not
> agree with it since he did not think that her condition warranted such restrictions.[3]

(Id. at 249.)  Dr. Foye's ultimate conclusion on September 17, 2002 that Plaintiff is not partially

disabled rests heavily on Dr. Weiland's opinions gathered from the telephone interview that same

day.[4]  (Id.)

_____

[3] Plaintiff argues that Dr. Weiland refused to sign the letter regarding her work
restrictions because Dr. Weiland "never got involved with matters of disability and he was not
going to do so now."  (Sussman Affidavit ¶7.)  Dr. Weiland subsequently signed the discharge
papers without the statement.  (Id.)

[4] Dr. Foye states:  "Even before my conversation with Dr. Weiland, it was my general
opinion that the medical records did NOT seem to justify continued restrictions from her prior
job duties.  However, I kept an open mind to what Dr. Weiland would say on her behalf.  As it

By letter, dated September 23, 2002, Prudential informed Wein that it upheld its original decision to terminate her benefits.  (Id. at 83-85.)   Its determination lists the above medical evidence and concludes:

> After a thorough evaluation of the above information, we have determinated that our original decision to terminate benefits effective September 1, 2002 was appropriate and our decision has been upheld.  Dr. Foye notes that your range of motion deficits in your wrist are relatively mild and there is full range of motion in your fingers and forearm.  Your physician, Dr. Weiland, also did not agree that you required restrictions for returning to full time work.  Although some of your treating medical professionals indicate a permanent partial disability, there is no evidence of a current physical condition or impairment that would impair your ability to perform the material and substantial duties of your own occupation on a full time basis, without restrictions.

(Id. at 85.)

On September 27, 2002, Prudential agreed to reevaluate Plaintiff's appeal after her workers' compensation medical evaluation became available.  (Id. at 87.)  That evaluation, performed by Eduardo Alvarez, M.D. and completed on October 31, 2002, was sent to Prudential on December 4, 2002.  (Id. at 226-28.)  Dr. Alvarez listed the above medical evidence, and reported that his examination of Plaintiff revealed that while Plaintiff's range of motion in her right shoulder, elbow, and long fingers in her right hand were all normal, that the wounds she suffered on September 11, 2001 caused her to continue to suffer substantial range of motion limitations in her wrists, with "some evidence of mild atrophy to the right shoulder girdle muscles."  (Id. at 226-27.)  Dr. Alvarez concurred with Dr. Stein's finding that these limitations caused Plaintiff a 60% loss of use of her right upper extremity.  (Id. at 227.)  The New York State Workers' Compensation Board subsequently found that Plaintiff has a "60.00% schedule loss of

---

turns out, his impression essentially supports the opinion that she does NOT have a physical/medical basis for current restrictions from her job."  (Id. at 250.)

use of the Right Arm," entitling her to a determination that she is permanently partially disabled. (Id. at 200.)

Plaintiff supplemented her request to Prudential to re-evaluate her appeal with a letter from retained counsel, dated February 5, 2003, which alleged deficiencies in the review of Dr. Foye, specifically that he did not examine Plaintiff, did not take into consideration her actual job responsibilities, which require "extensive use of the computer, keyboard and mouse," and failed to consider the opinions of Dr. Stein or Dr. Alvarez. (Id. at 215-16.)

By letter, dated March 31, 2003, Prudential upheld its prior decisions denying benefits. (Id. at 98-101.) In determining that Plaintiff's condition does not meet the Plan's definition of "partial disability," Prudential acknowledged receiving medical evidence from Kolber and Barenholtz that assessed wrist limitations, and Dr. Stein, which opined "a permanent disability of 60 percent of right upper extremity." (Id. at 99.) The letter does not cite or discuss Dr. Alvarez's October 31, 2002 report.

Notwithstanding evidence from Kolber, Barenholtz, and Dr. Stein suggesting a partial disability, Prudential appears to have relied in its denial on the August 13, 2002 letter from Dr. Weiland noting that Plaintiff had achieved full range of motion in her long fingers and Dr. Foye's report indicating that Dr. Weiland relayed in a telephone conversation that Plaintiff had "full range of motion." (Id. at 99.) Prudential further relied on Plaintiff's job description from Aon, which suggests that Plaintiff requires no more than four hours of computer use per day, which would permit "breaks from the computer as needed." (Id. at 100.) Prudential concluded that "[a]lthough some of [Plaintiff's] treating medical professional indicate a permanent partial disability, there is no evidence of a current physical condition or impairment that would impair

her ability to perform the material and substantial duties of her own occupation on a full time basis." (Id. at 100.)

On May 20, 2003, Wein again appealed Prudential's March 31, 2003 administrative denial, alleging that Prudential failed to consider Dr. Alvarez's report, and erred in finding that Plaintiff's job duties require no more than four hours of computer use per day. (Id. at 186-87.) Plaintiff enclosed a letter from Dr. Stein, dated May 20, 2003, reiterating his finding that Plaintiff "has a significant partial permanent disability, that with a reasonable degree of medical certainty will cause both long-term diminishing efforts to perform daily in the workplace as before, of 60% of the right upper extremity." (Id. at 178.) Plaintiff also enclosed three affidavits of Plaintiff's colleagues, all of whom testified that since 1991 Plaintiff's actual job duties primarily entail the preparation of actuarial and analytical reports through the use of the computer, and do not include managerial or supervisory responsibilities. (Id. at 181-84.)

Prudential arranged for Plaintiff's physical examination by Verghese George, M.D., a hand surgeon. (Id. at 165-67.) In a report dated September 3, 2003, Dr. George assessed limitations in Plaintiff's wrist and fingers. (Id. at 167) Dr. George offered no opinion on Plaintiff's ability to work. However, the record also contains a letter from Dr. George, dated October 8, 2003, that states the following: "This is an addendum to my report of 9/03/03. Patient may report to work 7 and ½ hours a day." (Id. at 164.)

By letter dated October 8, 2003, Prudential issued its final administrative appeal decision, upholding its determination that Plaintiff's limitations do not meet the definition of "partial disability" under the Plan documents. Prudential acknowledged that the description it relied on in its previous denial was inaccurate, and that Plaintiff's job duties "did not include management

responsibilities, . . . [but rather] include tasks generally performed using a personal computer and statistical software." (Id. at 113.) Prudential noted that Dr. George's exam showed that Plaintiff has minor limitations to her range of motion in her fingers, more significant limitations to her wrist movement, and that Dr. George opined that Plaintiff can return to work full time. (Id. at 113-14.) Prudential found Dr. George's findings and Dr. Alvarez's findings to be similar. (Id. at 114.) Prudential concluded that Plaintiff is not partially disabled, because she "retained full use of her left extremity, and is therefore fully capable of left-handed typing and mousing. . . . [Plaintiff's] physical examinations in 2002 and 2003 do not support that Ms. Wein would be unable to perform her job on a full time basis." (Id. at 114.)

Plaintiff timely filed the instant suit under ERISA to challenge Prudential's administrative denial of her claim for partial disability benefits.

## II. STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, *i.e.*, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(c) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the

moving party has met this burden, the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

"The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the opponent can create a genuine issue of material fact only by citing competent, admissible evidence.  Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).  Even if parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (internal citations and quotation marks omitted).

## B.    ERISA

Under 20 U.S.C. § 1132(a)(1)(B), a party may bring suit to recover benefits due under an employee benefit plan.  A decision to deny benefits to a participant in an employee benefits plan covered by ERISA is reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101, 115

(1989). Where such discretionary authority is conferred upon a plan administrator or fiduciary, decisions relating to a participant's eligibility for benefits will not be disturbed by a court unless the decision is arbitrary and capricious. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999). For the arbitrary and capricious standard to apply, the policy language of the plan must include a "clear reservation of discretion to the plan administrator." Kinsler, 181 F.3d at 245. As plan administrator, Prudential bears the burden of demonstrating "that the deferential standard of review applies." Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002); see also Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995) (reasoning that "party claiming deferential review should prove the predicate that justifies it").

The parties disagree on the standard of review that should apply in this case. Plaintiff maintains that this Court should review the denial of benefits de novo.[5] (Pl's Reply at 1-3.) Defendant contends that the language of the Policy indicates that the more deferential "arbitrary and capricious" standard of review is appropriate. (Def's Mem. at 15-18.)

This court finds that the Second Circuit's findings in Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98 (2d Cir. 2005) require this court to review these motions under a de novo standard of review. Defendant primarily bases its argument that its administrative determinations are entitled to deferential review on language in the Policy which "evidences a clear reservation of discretion by Prudential."[6] (Def's Mem. at 16.) In support of its argument, Prudential points to six instances in the Policy in which Prudential is listed as the entity that "determines" or

---

[5]Although Magistrate Judge Cheryl L. Pollak in a July 30, 2004 discovery order found a de novo review appropriate (Order, dated July 30, 2004, by Magistrate Judge Cheryl L. Pollak), as this question is raised in connection with a different motion, I shall consider this issue anew.

[6] This court notes that Prudential, which was the defendant in the Nichols matter, submitted this argument six months *after* the Nichols decision explicitly rejected it.

"decides" a particular issue. (Def's Mem. at 17 n.4 (citing the Administrative Record at 26-27, 29, and 38).) However, in Nichols, the Second Circuit instructed that a reservation of discretion must be clear and that any ambiguity is resolved against the insurer as the proponent of the deferential standard. Nichols, 406 at 108-109. "In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." Id. at 108. Hence, language that merely states that the insurer will make a determination regarding some condition of eligibility "lacks sufficient indicia of subjectivity. . . . [because t]o find discretion, we would have to read in language, effectively amending the provision to find disability when Prudential determines to its satisfaction that all these conditions are met." Id. at 109 (citation and quotation marks omitted). Accordingly, the Nichols Court explicitly rejected Prudential's argument in favor of deferential review, and holds that Policy language stating that the insurer decides issues of eligibility is insufficient to trigger a deferential standard of review.

Defendant's other arguments in support of a deferential standard of review are similarly without merit. Prudential contends that it "explicitly assumed responsibility for interpretation of the Plan and held and reserved to itself the exclusive right to interpret, construe and administer the group insurance program provided under the Group Insurance Contract and Certificate of Coverage." (Def. Mem. at 16.) However, a review of the page of the Policy cited by Prudential in support of this argument (Pl. Ex. D. at 7) shows that Prudential's characterization of the Policy language is incorrect. The page in question contains an "Incontestability of the Contract" provision that limits how the Plan is construed, but is silent with respect to Prudential's discretion in arriving at determinations of claim eligibility. (Id.) The three other sections on the page address issues of age adjustment for premium calculations, the provision of certificates of

coverage and rights to inspect the Policy records to individual employees, and thus do not

support Defendant's position. (Id.) This argument is therefore without merit because it is not

supported by the Policy language.

Prudential further argues that deference is warranted because the Plan excludes the

employer from the process of amending the Plan and disclaims Aon as its agent. (Def. Mem. at

16.) However, Defendant's argument that Aon's limited responsibilities establish Prudential's

discretionary authority is unavailing, because the Plan's limitations on the employer's

involvement in the administration of the Plan does not evince an intent to grant Prudential

discretion in how it determines eligibility.

As the Policy does not clearly grant discretion to Prudential, this court must review

Prudential's determinations de novo. Furthermore, the Second Circuit has held that where an

ERISA determination is reviewed de novo, "the de novo standard of review applies to all aspects

of the denial of an ERISA claim, including fact issues, in the absence of a clear reservation of

discretion to the plan administrator." Kinstler, 181 F.3d at 245. Having established the standard

of review of the instant cross-motions for summary judgment, I shall now turn to the merits of

the parties' motions.

**III.    DISCUSSION**

As Plaintiff and Defendant raise different issues and arguments in their motions for

summary judgment, I shall consider them separately. However, material to both motions are

conditions of eligibility for partial disability under the Plan that are not disputed or are conceded

by the Defendant. As stated supra, under the Plan, Prudential must find that Wein has a partial

disability if she (a) cannot perform "the material and substantial duties of [her] own occupation

on a full time basis;" (b) works at her own occupation but cannot perform her duties on a full time basis; (c) earns less than 80% of her pre-disability earnings; and (d) is under the regular care of her doctor. (Pl's Ex. D. at 27; Def. 56.1 Stmt. ¶ 9.) Defendant in its motion papers does not dispute that Plaintiff works at her own occupation part time, earns less than 80% of her earnings prior to September 11, 2001, and is under the regular care of her doctor. Further, Prudential concedes that Wein's job responsibilities are not managerial and require extensive use of the computer keyboard and mouse. (Def's Mem. at 23.) Thus, at issue in the parties' cross-motions is the material factual question of whether Plaintiff's injuries continue to impose a limitation on Plaintiff that prevent her from using the computer keyboard and mouse to perform her work on a full time basis.

## A.     Prudential's Motion for Summary Judgment

Prudential argues that summary judgment against Plaintiff is warranted because Dr. Weiland's assessments and statements to Dr. Foye, Dr. Foye's report, and the assessment of Dr. George support the conclusion that Plaintiff does not have a partial disability. (Def's Mem. at 20-22.)

Drawing all permissible inferences from the record in favor of Wein, Prudential's motion must be denied. The medical evidence in the administrative record by Dr. Weiland and his office indicate that he treated Wein on May 14, June 11, and August 13, 2002, and that examinations on these dates showed that the fingers on Wein's right hand had regained full range of motion. (Pl's Ex. D at 303-305.) However, Wein's claimed physical limitations concern the range of motion *in her right wrist and forearm*, not her fingers. Moreover, the only assessments by Dr. Weiland regarding the work limitations caused by Plaintiff's injuries do not support the Defendant's

position.  In February 2002, Dr. Weiland assessed that Wein was "unable to work at a computer for many hours straight," (id. at 354), and this statement is not contradicted by his May, June, and August 2002 assessments, which do not opine on Plaintiff's ability to perform work full time that requires extensive use of the computer.  Accordingly, Dr. Weiland's assessments as a whole do not support but rather contradict Defendant's position that Wein can operate a computer full time consistent with her job duties.

Furthermore, Dr. Foye's report does not support Defendant's motion.  It is uncontested that Dr. Foye did not examine Plaintiff, and arrived at his determination that she could work full time based on an incorrect statement of Plaintiff's job duties that described her duties as primarily managerial and supervisory in nature.  (Id. at 249-49.)  Furthermore, Dr. Foye's report described but did not explain why it rejected the assessments of Dr. Stein, Kolber,[7] and Barenholtz, which suggests that Dr. Foye did not adequately consider this evidence.  Lastly, to the extent that Dr. Foye relied on a hearsay statement from Dr. Weiland to support his conclusion that Wein is not partially disabled (id. at 249), that hearsay statement cannot be considered by this court in support of Defendant's summary judgment motion.  A court may only consider competent, admissible evidence in support of a Rule 56 motion.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).  This court must therefore reject Dr. Foye's statement regarding Dr. Weiland's assessment of Plaintiff's condition because it is hearsay and Defendant offers no hearsay exception that might qualify it as competent, admissible evidence to support a summary judgment motion.

---

[7] Although Dr. Foye's report does explain that it rejects Kolber's estimate of Plaintiff's loss of future earning capacity because it lacks a mathematical basis, it does not dispute Kolber's assessment that Plaintiff cannot utilize a computer full-time.

Lastly, this court does not credit Dr. George's one-line addendum finding Wein able to work full time, because it is unsupported by his own examination conducted one month earlier. As Prudential concedes, Dr. George's September 3, 2003 examination did not make an assessment about Plaintiff's ability to work full time (id. at 166), and arrived at similar findings to those of Dr. Alvarez, who concluded that Plaintiff has a 60% loss of use of her right upper extremity. (Compare Pl's Ex. D. at 167 (Dr. George) with id. at 227 (Dr. Alvarez).) However, Dr. George's October 8, 2003 letter does not set forth the job description that Dr. George utilized to arrive at the determination that Plaintiff can work full time and does not explain why Plaintiff is able to perform her job duties on a full-time basis despite the physical limitations he found in his examination of her. Thus, Dr. George's October 8, 2003 letter opining that Wein "may return to work 7 and ½ hours a day" is not entitled to any weight by this court, because it is unsupported by his September 3, 2003 examination.[8] Even under the deferential "arbitrary and capricious" standard of review, a mere statement concluding that Wein is capable of working full time with no supporting explanation would not constitute substantial evidence. See, e.g., Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) (remanding denial of benefits under arbitrary and capricious review because unsupported by substantial evidence); Cejaj v. Bldg. Serv. 32B-J Health Fund, 02-CV-6141, 2004 U.S. Dist. LEXIS 3401, at *25-*26 (S.D.N.Y. Mar. 5, 2004) (finding that failure to provide sufficient explanation for determination of disability is unreasonable).

---

[8] Wein urges that this court accept the deposition testimony of Dr. George in support of her argument that Dr. George's assessment in his October 8, 2003 letter should be rejected. (Pl's Reply at 9-10.) As explained supra, I afford Dr. George's October 8, 2003 letter little weight due to flaws in the assessment apparent from the administrative record. Wein's request is therefore denied as moot.

Defendant has therefore produced no competent, admissible evidence to allow this court to conclude that there is no triable issue of fact as to whether Plantiff has a partial disability under the Policy. To the extent that Defendant argues that Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) requires that this court defer to its rejection of the assessments of Drs. Stein and Alvarez and its reliance on Drs. Weiland, Foye, and George, nothing in Black & Decker suggests that a court reviewing an ERISA claim de novo cannot make independent evaluations of material fact evidence. Indeed, Second Circuit authority instructs this court to review "'all aspects of an administrator's eligibility determination, *including fact issues*, de novo.'" Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 442 (2d Cir. 2006) (quoting Locher, 389 F.3d at 293) (emphasis supplied). This court therefore finds that the evidence offered by Defendant in support of its motion for summary judgment is insufficient to establish that Plaintiff is able to perform her computer-related job duties on a full time basis.

**B.** **Wein's Motion for Summary Judgment**

Wein argues that she is entitled to summary judgment on the issue of her partial disability because the medical evidence supplied by Drs. Stein and Alvarez, Kolber, and Barenholtz demonstrate that she suffers a "partial disability" as defined under the Policy. (Pl's Reply Mem. at 6-9.) Upon a review of the evidence submitted by Plaintiff in support of her claim, I find that there is no triable issue of fact as to whether Plaintiff's injuries prevent her from performing her job duties full time.[9]

---

[9] Even if Defendant had met its burden under Rule 56 to show that Plaintiff is not partially disabled, for the reasons explained infra, Section III(B), I find that Plaintiff has met her burden to show a triable issue of fact regarding her ability to perform her job duties on a full time basis.

First, there is no triable issue of fact as to whether Plaintiff has a substantially limited range of motion in her right wrist. Dr. Stein's assessment that the Plaintiff's deficit "will cause both long term diminishing efforts daily to perform in the workplace as before, of 60% of the right upper extremity" (id. at 292) is due substantial weight. It is uncontested that Dr. Stein has been Wein's treating physician since April 2002, and that his assessment is based on multiple examinations of Wein from April 2002 through May 2003. Furthermore, Dr. Stein's opinion is substantially corroborated by Dr. Alvarez, an independent examining medical consultant, who concurred with Dr. Stein's assessment of a 60% permanent deficit in the use of the Plaintiff's right upper extremity. (Id. at 227.) While not dispositive on this issue, the reliance by the New York State Worker's Compensation Board on Dr. Alvarez's report to find that Plaintiff has lost 60% of use of her right arm is certainly admissible evidence supporting Plaintiff's motion. Furthermore, as explained supra, there is no competent, admissible evidence contradicting the assessments of Drs. Stein and Alvarez. To the extent that the medical opinions of Drs. Stein and Alvarez conflict with those of Drs. Weiland, Foye, and George, Dr. Stein's assessment of Plaintiff's limitations is entitled to greater weight than the observations of Dr. Weiland, who has not assessed Wein since August 2002, Dr. Foye, who did not examine Plaintiff, and Dr. George, a one-time examining physician. Accordingly, I find that Plaintiff has carried her burden of establishing the absence of a genuine issue of material fact that Wein has lost 60% of use of her right arm, and that Prudential has not "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Anderson, 477 U.S. at 256.

Second, Dr. Weiland's February 2002 assessment and the recommendations of hand and occupational therapists Kolber and Barenholtz establish that Plaintiff's limitations in her right

arm prevent her from performing her job duties full time. On February 11, 2002, Dr. Weiland stated that Wein "tires easily" and is "unable to work at computer keyboard many hours straight." (Id. at 354.) Barenholtz opined on July 11, 2002 that Plaintiff "continues to have significant limitations in range of motion and strength/power of her dominant extremity. . . . The resulting lack of motion limits her ability to weightbear through the joint without pain. . . . [and] it is difficult [for her] to hold and manipulate small objects in her palm." (Pl's Ex. D. at 297.) Dr. Weiland's and Barenholtz's assessments establish that Plaintiff cannot use a computer and a mouse on a full time basis without tiring, and that such use can be painful for Plaintiff. Furthermore, taken in conjunction with Dr. Weiland's and Barenholtz's assessment, Kolber's instruction that Plaintiff "not work beyond the point of slight fatigue or slight discomfort" (id.), because it might exacerbate her injuries, establishes that Plaintiff cannot use the computer on a full time basis. I therefore find that the opinions and recommendations of Dr. Weiland, Kolber and Barenholtz meet Plaintiff's burden to show an absence of material fact regarding her inability to use the computer and mouse on a full time basis.

Defendant fails to meet its burden to show a genuine material fact regarding Plaintiff's ability to perform her job duties full time. Defendant provides no statements by any experts, such as occupational therapists or vocational counselors, that might rebut the evaluations of Plaintiff's occupational limitations by Dr. Weiland, Kolber and Barenholtz. See, e.g., Casey v. First UNUM Life Ins. Co., 00-CV-313, 2004 U.S. Dist. LEXIS 5304, at *16 (N.D.N.Y. Mar. 31, 2004) (finding that vocational consultant's opinion sufficient to establish that plaintiff can perform the material duties of her occupation). Moreover, the evidence submitted by Defendant, Dr. Weiland's statements to Dr. Foye, Dr. Foye's report, and the assessment of Dr. George,

provide no assessment regarding whether Plaintiff can utilize a computer full time to perform her job duties. Lastly, to the extent that Prudential argues that Wein cannot be partially disabled because she has full use of her *left* hand, Prudential offers no competent, admissible evidence in support of this argument, and I hence reject it as speculative and impermissible under Rule 56. See Soron v. Liberty Life Assur. Co., 02-CV-1514, 2005 U.S. Dist. LEXIS 42972, at *39-*41 (N.D.N.Y. May 2, 2005) (granting summary judgment to plaintiff is appropriate in ERISA dispute where substantial evidence supports finding of disability under the Policy). It is uncontested that Plaintiff is right-hand dominant, which does not permit the inference that limitations to Plaintiff's right arm would not interfere with her ability to perform work, such as using a keyboard and mouse, that is typically performed by the dominant hand.

Under the circumstances, reversal and not remand of Prudential's adverse determination regarding Wein's partial disability claim is the appropriate remedy. Remand is appropriate where "the evidence is not so overwhelmingly one-sided that a reasonable person could only conclude that plaintiff was . . . disabled." Brown v. Bd. of Trs. of the Bldg. Serv. 32B-J Pension Fund, 392 F. Supp. 2d 434, 445 (E.D.N.Y. 2005) (Trager, J.). However, the Second Circuit instructs that reversal is the appropriate remedy where "'the difficulty is not that the administrative record was incomplete, but that a denial of benefits based on the record was unreasonable.'" Zervos v. Verizon N.Y., 277 F.3d 635, 648 (2d Cir. 2002) (quoting Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 51 n.4 (2d Cir. 1996)). Given the fact that this claim has been subject to numerous administrative appeals, independent medical examinations, and opportunities by both parties to clarify the record, I find that the administrative record is complete, and that further consideration of Wein's claim by Prudential would be a "useless

formality." <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1071 (2d Cir. 1995); <u>see also</u> <u>Neely v. Pension Trust Fund of the Pension, Hospital</u>, 00-CV-2013, 2004 U.S. Dist. LEXIS 27777, at *39-*40 (E.D.N.Y. Dec. 8, 2004) (Johnson, J.) (holding that failure by insurer to adequately consider complete administrative record warranted judgment in favor of plaintiff).  Moreover, on the basis of the evidence before this court, no reasonable juror would find for Prudential on the limited issue of whether Plaintiff's injuries permit her to perform her job duties full time. Prudential has not submitted admissible, competent evidence in support of its administrative denial, and has failed to raise any significant doubt about the opinions of Drs. Stein and Alvarez on the issue of Plaintiff's physical limitations, or of Dr. Weiland, Kolber and Barenholtz on the issue of Plaintiff's inability to use a computer full time.  <u>See</u>, <u>e.g.</u>, <u>Quigley v. Unum Life Ins. Co. of Am.</u>, 340 F. Supp. 2d 215, 224 (D. Conn. 2004) ("Where the record reveals well-documented complaints . . . and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints.")  I therefore reverse Prudential's administrative denial.  The Plaintiff is entitled to coverage for her partial disability beginning September 1, 2002, the date that Prudential terminated her long term disability claim.  (Pl's Ex. D. at 74.)

## C.    Plaintiff's Motion for Attorney's Fees

Plaintiff also applies to this court for an award of attorney's fees.  (Pl's Mem. Opp. Summ. J. at 24-25.)  Defendant argues that Plaintiff is not entitled to attorney's fees.  (Def's Mem. at 24-25.)  Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g).  The factors the court should weigh in determining whether to award attorney's fees are:

> (1) the degree of the offending party's culpability or bad faith[;] (2) the ability of the offending party to satisfy an award of attorney's fees[;] (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions[;] and (5) whether the action conferred a common benefit on a group of pension plan participants.

Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).

Prudential argues that Plaintiff's request for attorney's fees should be denied because "the administrative record demonstrates Prudential's careful consideration of the Plaintiff's claim[.]" (Def's Mem. at 24.)  On the contrary, although a discussion of the quality of Prudential's review has been unnecessary under the de novo standard of review, I find that Prudential's review of Wein's claim was rife with errors.  Prudential's initial denial erroneously analyzed Wein's claim under the Policy definition of "total disability," despite the fact that Wein claimed benefits for a "partial disability."  (Pl's Ex. D at 74.)  Prudential failed to acknowledge Wein's true job responsibilities until its final administrative review.  Prudential's incorrect characterization of Dr. Weiland as Wein's primary treating physician in its September 23, 2002 administrative denial, its specific request to Dr. Foye that he interview Dr. Weiland but not Dr. Stein, who has been Plaintiff's treating physician since August 2002, and Prudential's March 31, 2003 denial which does not explain why it did not credit Dr. Stein's assessment, ignored Dr. Alvarez's October 2002 examination, and relied on an unsubstantiated hearsay conversation with Dr. Weiland to support its denial (id. at 98-101), demonstrates a "cherry-picking" of evidence in support of its determinations.  These errors weigh heavily in favor of granting attorney's fees.

Prudential raises no concern over its ability to satisfy a potential award of attorney's fees. Furthermore, an award of attorney's fees would serve a purpose in encouraging Prudential to modify its procedures for the better.  Better procedure would, in turn, affect review of all

participants' claims for benefits under the Plan. Therefore, the court, in its discretion, grants Plaintiff's request to award reasonable attorney's fees and costs.

## IV. CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment is DENIED, and Plaintiff's motion for summary judgment is GRANTED. Defendant Prudential shall pay benefits to Wein, in the amount due under the terms of the Plan, plus prejudgment interest at the statutory rate, that have accrued from September 11, 2001 through the present date. Furthermore, Plaintiff's request for reasonable attorney's fees and costs is GRANTED. Plaintiff shall submit an affidavit detailing the amount of fees and costs by October 20, 2006. Defendants may respond by November 17, 2006. Plaintiff may submit a reply, if any, by December 22, 2006.

SO ORDERED.


Dated: Brooklyn, New York
      September 30, 2006.

_____/s/_____
NICHOLAS G. GARAUFIS
United States District Judge
